NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-779

COMMONWEALTH

vs.

CHRISTOPHER EATON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a Superior Court trial, a jury found the defendant, Christopher Eaton, guilty of two counts of rape of a child (aggravated by a five-year age difference), one count of assault with intent to rape a child, and four counts of indecent assault and battery on a child under fourteen, each involving the same victim, the daughter of his then-girlfriend.[1]  The defendant appeals, arguing that the judge erred in (1) admitting evidence of prior bad acts and (2) allowing the amendment of counts seven (rape of a child, five-year age difference) and nine (indecent

_____

[1] The defendant was also charged with an additional count each of rape of a child and assault with intent to rape a child, but his motion for a required finding of not guilty was allowed as to these counts.

assault and battery on a child under fourteen), after the close of the Commonwealth's case, to expand the date range within which the crimes were alleged to have occurred. We are not persuaded by either argument and therefore affirm the judgments.

1. Prior bad acts. a. Background. Six of the counts were charged on divers dates from October 23, 2013 to April 1, 2017, in Salisbury, and the three others were charged on a date between April 1 and April 30, 2017, in Danvers.[2] Between 2013 and 2017, the mother, the defendant, and the victim moved from Massachusetts to Connecticut and then back to Massachusetts. While living in Connecticut, they regularly returned to Massachusetts for visits.

Before trial, the Commonwealth moved in limine to admit evidence of uncharged conduct by the defendant against the victim while in Connecticut. The defendant, in turn, moved in limine to exclude that uncharged conduct from evidence.[3] During a hearing on the motions, the Commonwealth argued that the jury should not be left with "a misunderstanding that things were not happening in Connecticut when they were living there full time and only happening in Mass[achusetts]," and that the victim

_____

[2] The Danvers indictments arose from an overnight trip the defendant and victim took to a waterpark resort.

[3] Both motions also addressed evidence of uncharged conduct occurring in New Hampshire. That evidence is not at issue on appeal.

2

should not "be foreclosed from . . . even mentioning that things were also happening at home during that time period."  The judge allowed the Commonwealth's motion to admit the Connecticut conduct for the purpose of showing the nature of the relationship and the state of mind of the defendant and victim. The judge denied the defendant's motion to exclude such evidence.

b.  Discussion.  On appeal the defendant argues that the judge's rulings were an abuse of discretion.  The defendant also challenges the admission at trial of additional bad acts evidence not addressed by the motions in limine or otherwise objected to at trial.  We consider these arguments in turn.

We review the admission of the Connecticut conduct addressed in the motions for prejudicial error.  The determination whether to admit such evidence is "committed to the sound discretion of the trial judge and will not be disturbed by a reviewing court absent 'palpable error.'" Commonwealth v. McCowen, 458 Mass. 461, 478 (2010), quoting Commonwealth v. Fordham, 417 Mass. 10, 23 (1994).  The question is not whether we would have made the same decision, but instead whether the judge made a "clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (quotation

3

and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Evidence of a defendant's prior bad acts is not admissible to show "bad character or propensity" but may be admitted where relevant for a nonpropensity purpose, such as to show "a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive." Commonwealth v. Helfant, 398 Mass. 214, 224 (1986).  See Mass. G. Evid. § 404(b)(2) (2025). Where a defendant is charged with sexual assault, "some evidence of uncharged conduct may be admissible to give the jury a view of the entire relationship between the defendant and the alleged victim, and the probative existence of the same passion or emotion at the time in issue" (quotation and citation omitted). Commonwealth v. Dwyer, 448 Mass. 122, 128-129 (2006).  However, such evidence should not be admitted "if its probative value is outweighed by the risk of unfair prejudice to the defendant." Commonwealth v. Crayton, 470 Mass. 228, 249 (2014).  See Mass. G. Evid. § 404(b)(2).

i.  Probative value.  The defendant argues that the Connecticut conduct was not probative.  "To be sufficiently probative the evidence must be connected with the facts of the case or not be too remote in time." Commonwealth v. Barrett, 418 Mass. 788, 794 (1994).  The evidence here met this requirement, because the sexual abuse that occurred in

4

Massachusetts continued in Connecticut (sexual touching in bed and the shower), with the same victim, and within the same time period as the charged conduct (October 2013 to April 2017). If the jury were allowed to develop the misimpression that the abuse reported by the victim somehow stopped at the Connecticut border, it would leave an artificial gap in the victim's testimony and could cause the jury to unfairly question her credibility. See Commonwealth v. Childs, 94 Mass. App. Ct. 67, 72 (2018) (uncharged conduct particularly relevant to nature of relationship where conduct was uncharged only because it occurred in different county). See also Commonwealth v. Nascimento-Depina, 496 Mass. 1, 3, 8-9 (2025) (evidence of prior sexual assaults on child in Chelsea admissible in prosecution of same defendant for assaulting same victim in Taunton).

The defendant next argues that testimony describing charged conduct was sufficient to show the nature of the relationship, so that introducing uncharged conduct was not necessary. But this argument fails, as "[i]t is not a foundational requirement for the admissibility of prior bad act evidence that the Commonwealth show either that the evidence is necessary or that there is no alternative way to prove its case." Commonwealth v. Oberle, 476 Mass. 539, 551 n.7 (2017), citing Commonwealth v. Copney, 468 Mass. 405, 413 (2014). See Mass. G. Evid. § 404(b) note.

5

ii.  Unfair prejudice.  The defendant also argues that the Connecticut conduct was unfairly prejudicial.  First, he contends that, as in Dwyer, 448 Mass. at 127-130, the prior bad act evidence was so voluminous that it overwhelmed the case.  We are unpersuaded.

In Dwyer, the defendant was charged with two incidents of sexual abuse, yet the victim testified in detail about seven different incidents of uncharged abuse.  Dwyer, 448 Mass. at 128.  Of the sixty-five transcript pages of the victim's direct testimony, only fifteen pertained to charged conduct, whereas twenty-one pertained to uncharged assaults.  Id.  Consequently, the defendant's cross-examination of the victim was focused primarily on discrediting her testimony concerning uncharged conduct.  Id.  On appeal, the Supreme Judicial Court determined that the defendant had "shown the requisite prejudice" and that the judge should have intervened to prevent the bad act evidence from overwhelming the case.  Id. at 129.  Here, in contrast, the majority of the victim's testimony on direct examination focused on the charged conduct.  The Commonwealth did not reference the uncharged conduct in its closing.  See Nascimento-Depina, 496 Mass. at 9 (risk of prejudice slight where, among other factors, prosecutor's closing argument referred to bad acts evidence only briefly).  The testimony of uncharged conduct did not overwhelm this case.

Second, the defendant asserts without further elaboration that "[t]he limiting instruction was insufficient." We cannot agree. The judge followed the favored practice of giving "contemporaneous limiting instructions," Commonwealth v. Facella, 478 Mass. 393, 402 (2017), and he repeated them in his final charge. See Commonwealth v. Walker, 442 Mass. 185, 202 (2004) (risk of prejudice from prior bad act testimony "sufficiently ameliorated by the judge's limiting instructions, given immediately after the testimony and repeated during the final instructions"). We presume the jury followed these instructions. Commonwealth v. Donahue, 430 Mass. 710, 718 (2000). Any risk of unfair prejudice was thereby limited.

iii. Unobjected-to bad acts evidence. On appeal, the defendant argues that testimony of uncharged conduct occurring in Massachusetts was admitted at trial and caused him unfair prejudice. That conduct was not addressed in the motions in limine, which, as relevant here, addressed only the Connecticut conduct. See note 2, supra. Further, the evidence of uncharged Massachusetts conduct was not objected to, nor does the defendant argue on appeal that its admission created a substantial risk of miscarriage of justice. Thus, the issue is not properly before us. Even if it were, for reasons similar to those discussed above, we conclude that the evidence did not create a substantial risk of miscarriage of justice. That is,

7

we have no "serious doubt whether the result of the trial might have been different had the [claimed] error not been made." Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).

The defendant also objects on appeal to evidence of another instance of uncharged conduct, groping the victim under a blanket while her mother was present in the room, which did occur in Connecticut. But this evidence was not elicited by the Commonwealth and thus was not addressed by the motions in limine. Rather, the defendant elicited this testimony during his cross-examination of the victim.[4] Thus, because the defendant's objection is unpreserved, and because on appeal he does not argue that his own elicitation of this evidence created a substantial risk of miscarriage of justice, the issue is not properly before us. Even if it were, we conclude that there was no such risk, particularly where the defendant made use of this evidence in closing argument to suggest that the victim's story was implausible.

2. Amendment of indictments. After the close of its case-in-chief, the Commonwealth moved to amend the indictments as to the Danvers counts (counts seven and nine) from "on a date between April 1, 2017 to April 30, 2017" to "a date between

_____

[4] Neither motion by its terms sought a ruling on the admissibility of any bad acts evidence the defendant might offer, nor was that issue mentioned at the motion hearing.

8

April 1, 2017 and June 30, 2017," to reflect the mother's testimony that the incidents in Danvers occurred in May or June of 2017.  The judge heard argument and granted the Commonwealth's motion, over the defendant's objection, and after agreeing to give the jury an instruction, as discussed infra, to prevent any unfair prejudice to the defendant.  The defendant now argues that the judge abused his discretion by allowing the amendments.

"Upon his own motion or the written motion of either party, a judge may allow amendment of the form of a complaint or indictment if such amendment would not prejudice the defendant or the Commonwealth."  Mass. R. Crim. P. 4 (d), 378 Mass. 849 (1979).  "The power of the court to allow amendment to an indictment also has constitutional constraints."  Commonwealth v. Knight, 437 Mass. 487, 492 (2002).  Under art. 12 of the Declaration of Rights of the Massachusetts Constitution, "no one may be convicted of a crime punishable by a term in the State prison without first being indicted for that crime by a grand jury."  Commonwealth v. Barbosa, 421 Mass. 547, 549 (1995).  "An amendment that 'materially changes the work of the grand jury' interferes with that right" (citation omitted).  Knight, 437 Mass. at 492.  Thus, we consider whether the amendment (1) addressed a matter of substance rather than form, (2) unfairly prejudiced the defendant, or (3) materially changed

9

the work of the grand jury.  Id. at 492-494.  We answer all three questions in the negative.

First, the amendment was one of form.  "Matters of form are those that are 'not essential to the description of the crime charged'" (citation omitted).  Knight, 437 Mass. at 492.  Date and time are not elements of rape of a child or indecent assault and battery on a person under fourteen.  See Commonwealth v. Lawton, 82 Mass. App. Ct. 528, 532 n.4 (2012); Commonwealth v. Miozza, 67 Mass. App. Ct. 567, 573 (2006).  Thus the dates of those offenses need not be alleged in an indictment.  See G. L. c. 277, § 20.  Further, "if an acquittal on the original charge would not bar prosecution on the amended charge, the amendment is one of substance."  Commonwealth v. Bynoe, 49 Mass. App. Ct. 687, 691 (2000), citing Commonwealth v. Snow, 269 Mass. 598, 609-610 (1930).  Here, however, if the defendant were acquitted on the original charges (alleging conduct in April 2017), no prosecution could have occurred on the amended indictments (alleging conduct between April and June 2017), because they would include an overlapping period of time, the month of April 2017.  Thus, the amendment is one of form.

Second, the defendant was not unfairly prejudiced by the amendment.  The defendant erroneously argues that the judge failed to consider this issue.  To the contrary, the judge heard argument on prejudice from both parties before granting the

10

motion.  The defendant asserted that he would be prejudiced by the amendments because, had he known of them prior to trial, his cross-examination of an investigating officer could have focused on whether the officer had found any evidence corroborating the defendant's presence in Danvers during the expanded time period. To eliminate this prejudice, the judge agreed to, and did, instruct the jury that "no corroborative records [relating to any visit to Danvers] have been presented and that, therefore, for the purposes of determining whether the Commonwealth has met its burden of proof beyond a reasonable doubt as to counts [seven] and [nine], they do not exist."  Thus, any theories the defendant could have pressed had he known of the amendments earlier were still available to him during his closing argument -- where, indeed, he pointed to the "lackluster investigation" that "found absolutely nothing."  In sum, the timing of the amendments did not prejudice the defendant.  See Donahue, 430 Mass. at 718 (jury presumed to follow judge's instructions).

Third, the amendment did not materially change the work of the grand jury.  The amendment altered only the dates, not an essential element of counts seven and nine, as discussed above. Cf. Commonwealth v. Roby, 462 Mass. 398, 405 (2012) (work of grand jury not materially changed where only location of crime was amended).  Contrast Commonwealth v. Ruidiaz, 65 Mass. App. Ct. 462, 463-464 (2006) (amending indictment to include "a

11

person over sixty years of age" added essential element of offense and materially changed work of grand jury).  In sum, the judge did not abuse his discretion in allowing the amendments.

We dispose summarily of the defendant's remaining argument: that the judge, in his initial instructions, confused the jury by mistakenly describing counts four and nine as alleging indecent touching of the victim's buttocks (rather than her breast).  Yet, the jury were correctly informed regarding counts four and nine when the clerk read them the indictments and then again during the judge's final charge.  Additionally, the verdict slips correctly described counts four and nine as alleging touchings of the breast, not the buttocks.  The defendant was not unfairly prejudiced by the judge's single misstatement, where the jury were provided with the correct information three times.

<u>Judgments affirmed</u>.

By the Court (Blake, C.J., Sacks & D'Angelo, JJ.[5]),

*Paul Little*

Clerk

Entered: August 8, 2025.

---

[5] The panelists are listed in order of seniority.